**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| ——————————————— | : | Civil Action No. 15-3458 (FLW) |
| CARMEN MONEGRO, | : | |
| | : | **OPINION** |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| CAROLYN W. COLVIN, | : | |
| Acting Commissioner of Social Security, | : | |
| | : | |
| Defendant. | : | |
| ——————————————— | : | |

**WOLFSON, United States District Judge**:

Carmen Monegro ("Monegro" or "Plaintiff"), appeals from the final decision of the Acting Commissioner of Social Security, Carolyn W. Covlin ("Defendant") denying Plaintiff disability benefits under Title II of the Social Security Act (the "Act"). After reviewing the Administrative Record, the Court finds that the Administrative Law Judge's ("ALJ") opinion was based on substantial evidence and, accordingly, affirms the decision.

## I.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff was born on October 16, 1959, and was 51 years old on the alleged disability onset date of September 1, 2010. A.R. 125 (hereinafter "A.R."). The highest grade of education Plaintiff has completed is 9th grade. A.R. 150. Prior to her alleged disability, Plaintiff worked as a Bus Aide. A.R. 28. Plaintiff did not stop working as a result of her disability; rather, Plaintiff was terminated in 2009 when her "company closed and [she] was laid off." A.R. 149. Plaintiff reported that although her medical condition became more severe in September 2010, she received unemployment benefits until August 2011. A.R. 149.

1

On September 27, 2011, Plaintiff applied for social security disability insurance benefits, alleging disability beginning on September 1, 2010. A.R. 125-32. Plaintiff's claim was denied on January 24, 2012, A.R. 75-79, and again upon reconsideration. A.R. 85-87. On July 26, 2012, Plaintiff requested a hearing, A.R. 88-89, which was held on September 24, 2013, before ALJ Richard West. A.R. 10-19.

Plaintiff, who was represented by Michelle L. Waldman, Esq., appeared and testified. A.R. 28-38. No testimony was taken from a vocational expert. On November 15, 2013, the ALJ determined that Plaintiff was not disabled and issued a decision denying her claim for disability insurance benefits. A.R. 10-19. Plaintiff requested review by the Appeals Council, which was denied on March 19, 2015. A.R. 1-6. On May 20, 2015, Plaintiff filed the present appeal against Defendant.

### A.    Review of the Medical Evidence

Plaintiff's medical record in this matter begins in 1998. In February of 1998, Plaintiff was the back seat passenger of a vehicle struck from behind, which injured her back.[1] A.R. 237.

On March 7, 1998, Plaintiff was examined at Nicola Chiropractic Center, P.A., for neck pain, low back pain, and cephalagia, and was diagnosed with lumbar sprain/strain, lumbalgia, cervical radiculitis, cervical sprain/strains, cervicalgia, disc herniation, and disc bulge. A.R. 244-48.

On March 30, 1998, Plaintiff was examined by Francisco delValle, M.D., who noted that Plaintiff suffered no loss of consciousness or post-traumatic seizures, and that she had "sustained acceleration/deceleration injuries to both the cervical and lumbar areas." A.R. 237. Dr. delValle

---

[1] The medical records also indicate that Plaintiff was involved in a motor vehicle accident in August 1999, but that all of her injuries were caused by the February 1998 accident. A.R. 252.

also noted that Plaintiff was experiencing significant neck pain, numbness and tingling in her right arm and hand with occasional radiating pain, low back pain radiating down her right leg, and frequent headaches which occurred "almost daily."   A.R. 237.   Dr. delValle observed that Plaintiff's headaches were associated with vertigo, visual blurring, tinnitus, and nausea.  A.R. 237. Dr. delValle concluded "that all of the injuries mentioned above are a direct consequence of her motor vehicle accident in February of 1998" and that Plaintiff   "has significant functional impairment, especially at her workplace."  A.R. 237-38.

On June 5, 1998, Plaintiff underwent an MRI of her cervical spine, performed by David Rosenthal, M.D., which showed a "focal disc bulge in the midline at C4/5."  A.R. 241.  On that same date, Dr. Rosenthal also performed an MRI of Plaintiff's lumbar spine, which showed "herniation of nucleus pulposus in the midline at L5/S1."  A.R.  242.

On July 29, 1998, Plaintiff underwent a follow-up evaluation by R. Neil Pelman, M.D.  Dr. Pelman observed that Plaintiff suffered from headaches and light headedness four times a week, as well as neck and lower back pain, and pain in both knees and her right shoulder.  A.R. 236.  Dr. Pelman noted that MRI scans of Plaintiff showed evidence of disc bulging at the C4-5 level in the cervical spine and L5-S1 disc herniation in the lumbar spine.  A.R. 236.

On July 29, 1999, Plaintiff was examined by Charles G. Kalko, M.D.. A.R. 254.  Dr. Kalko concluded that Plaintiff suffered from lumbar radiculopathy and recommended an EMG for Plaintiff's lower extremities and a lumbar CT myelogram.  A.R. 254-55.

On October 13, 1999, Sonda de Antonion, M.D., evaluated Plaintiff's lower extremities and concluded that the "EMG/NCV of the lower extremities is abnormal and is consistent with right L5-S1 radiculopathy."  A.R. 250.  On October 27, 1999, Dr. Antonion evaluated Plaintiff's upper extremities and concluded that the "EMG/NCV of the upper extremities is abnormal and is

consistent with median nerve dysfunction at the level of the wrists bilaterally," and recommended "[c]linical correlation." A.R. 249. On October 30, 1999, H. Winchman, M.D., performed an MRI on Plaintiff which showed "[m]ild degenerative disc changes at L5-S1 with small right posterior focal disc bulge/herniation at this level with no significant encroachment upon the thecal sac." A.R. 251.

On January 17, 2000, Plaintiff was examined again by Dr. Kalkon, who performed an EMG report which "revealed right L5 & S1 radiculopathy." A.R. 252. At Dr. Kalko's recommendation, Plaintiff underwent a lumbar CT myelogram at Rahway hospital on January 24, 2000, which revealed an L5-S1 disc herniation, and "[s]urgery was recommended." A.R. 252.

On February 3, 2000, Plaintiff underwent a "one-level lumbar micro laser discectomy at Rahway hospital." A.R. 252. In a report dated March 2, 2000, Dr. Chalko stated that "[a]t this time, I consider [Plaintiff's] prognosis as guarded. She will require ongoing clinical follow up, eight weeks of aggressive post-surgical physical therapy and continued management for lumbar pain syndrome. The surgical therapeutic goal was to prevent further neurological deterioration of the lumbar spine." A.R. 252.

On November 16, 2011, Plaintiff was given a consultative examination by Arden Fusman, M.D. A.R. 263-65. Dr. Fusman stated that Plaintiff's history included "diabetes, asthma, and abdominal hernia [and] also had 2 lumbosacral back surgeries one in 2000 and 2001." A.R. 263. Dr. Fusman observed that Plaintiff had positive straight leg raise testing bilaterally; had very slow pace gait; held onto her daughter while ambulating; had normal strength, sensation, and reflexes; and reported that she sometimes needed help getting out of bed, dressing, and showering A.R. 263-65. Dr. Fusman's assessment was as follows:

> [Plaintiff] is status post 2 surgeries in 2000 and 2001 to the lumbosacral spine with continued chronic low back pain. Straight leg raising is positive on the left with

4

> possible radiculopathy on the left with pain[] [in] both feet, possibl[y] related to lumbosacral radiculopathy.  She is limited in her ability to sit and stand for long periods of time as well as to walk.  She has a very slow pave gait and she actually held onto her daughter while she was ambulating during the exam.  She cannot lift and carry more than 10 pounds.  She will have difficulty bending, crouching, and stooping.  Her hearing and vision appears to be within normal limits, but were not formally tested.

A.R.  264.  Also, on November 16, 2011, Plaintiff underwent an MRI, performed by Stephen Toder, M.D., which showed only "mild degenerative changes most pronounced at the L5-S1 level." A.R. 265.

On December 15, 2011, Plaintiff was given a consultative examination by Dr. Francky Merlin.  A.R. 268-69.  Dr. Merlin observed that Plaintiff's straight leg raise was negative to 90 degrees bilaterally; she had only slight limitations with range of motion; had normal motor strength and reflexes; had normal station and gait, grasp strength, and manipulative functions; had no difficulty getting up from a sitting position or with getting on and off the examination table; and was able to sit, stand, and walk.  A.R. 268-69.  Dr. Merlin noted that Plaintiff had a 12-year history of diabetes, but had not been hospitalized for uncontrolled diabetes, and noted that her father and one sister have died from diabetes. A.R. 268.  Dr. Merlin diagnosed Plaintiff with diabetes mellitus. A.R. 269.

On July 26, 2013, lab tests indicated Plaintiff had a high glucose serum level, a low BUN level, a low BUN/Creatine ratio, a high level of triglycerides, a high level of Hemoglobin ALC, and a vitamin D deficiency.  A.R. 285-87.

On August 5, 2013, Sue Y. Kim, M.D., performed a DXA-dual energy bone mineral densitometry exam, which indicated that Plaintiff was Osteopenic.  A.R. 279-83.  The report of that exam provided that Plaintiff's lowest bone mass density value was at her Neck Left Femur, with a T-score of -1.3.  A.R. 280.

On August 8, 2013, lab tests indicated that Plaintiff had abnormal levels of glucose and ketones.  A.R. 278.

Plaintiff's treating physician, Sergio Sanches, M.D., who saw Plaintiff "as needed monthly to weekly" from 1999 through 2011, declined to complete a functional capacity evaluation opinion.  A.R. 257-59.

**B.       Review of Disability Determinations**

On September 27, 2011, Plaintiff applied for social security disability insurance benefits, alleging disability beginning on September 1, 2010.  A.R. 125-32.  On January 24, 2012, the Social Security Administration denied Plaintiff's claim for disability benefits, A.R. 75-79, finding:

- You do have pain.  However, it does not limit your ability to move about and use your limbs

- You have diabetes.  However, it has not damaged any vital body organs, and is not causing any problems which would prevent you from working.

- The evidence shoes no other condition which significantly limits your ability to work.

A.R. 75.  The Administration concluded:  "Based on the description of your job of Bus Driver Assistant which you performed for over a year, we have concluded that you have the ability to do this work."  A.R. 75.

In an undated document, the Social Security Administration denied Plaintiff's request for reconsideration, A.R. 85-87, finding:

- You have diabetes.  However, it has not damaged any vital body organs, and is not causing any problems which would prevent you from working.

- While you still experience some pain in your lower back, there is no severe muscle weakness or loss of feeling in your limbs.

- The evidence shows no other condition which significantly limits your ability to work.

6

A.R. 85.  The Administration again concluded:  "Based on the description of your job of Bus Driver Assistant which you performed for about 2 years, we have concluded that you have the ability to do this work."  A.R. 85

### C.    Review of Testimonial Record

At the hearing, Plaintiff testified with the aid of an interpreter.  A.R. 26.  Plaintiff testified she last worked two years prior to the hearing as a "bus aide" for the Middlesex Education Commission.  A.R. 28.  She described her job as follows:  "I used to greet the kids at the school bus, and then I would put them in their seats, buckle them up, and then I'd be walking back and forth checking the kids."  A.R. 28.  She testified that the job required heavy lifting and bending because she had to pick the children up to help them sit, in addition to bending to buckle them in, and "walking back and forth."  A.R. 28.  She estimated she had to lift 25-35 lbs., and that there was no way to perform the job without performing the lifting of the children.  A.R. 29.

Prior to her job as a bus aide, Plaintiff testified she worked at a factory called "Children's Place," where she was "in packing."  A.R. 29.  She testified she had to lift very heavy boxes, walk around, and had to bend at work.  A.R. 29.  Prior to that position, she worked as a "pick packer" at an employer named Marx & Rosenthanl.  A.R. 29.

Plaintiff testified that that she is unable to work in factories anymore, even if the ALJ were to find that she is not disabled. A.R. 29.  When asked why, she stated "[b]ecause I cannot." A.R. 30.  When questioned by the ALJ whether she still had pain in her back and neck, after noting that her medical records indicated she had back surgery previously, Plaintiff responded that "[s]ome days are better than others" and that she has "a lot of headaches."  A.R.  30.  She also responded affirmatively when asked if she had "any problem with either" of her legs.  A.R. 30.  Specifically,

she testified that her back pain goes into her right leg, all the way to her toes, which tingled.  A.R. 31.

Plaintiff testified that she was diagnosed with diabetes 12 years ago, and that she takes medication for that condition twice daily.  A.R. 31-32.  Plaintiff stated that her diabetes symptoms include feeling "very tired," "shaky," and "blurry vision" on "[s]ome days more than others."  A.R. 32.

Plaintiff also stated that she does not sleep well and that her lack of sleep is "the worst of everything."  A.R. 32.  As she explained:

> I have to be changing positions constantly and moving back and forth, and also if I eat around 5:00 or 6:00 p.m., the latest, I feel like the[] food is stuck right here in my stomach, like it doesn't go anywhere.  I don't sleep well at all.  I feel like the dinner is bothering me in my stomach, and also I get headaches.

A.R. 32.  She also explained that her neck and back hurt "a lot" when she is sleeping.  A.R. 32. Plaintiff also testified that she gets daily headaches, which last between one hour and the "whole day."  A.R. 32-33.  Plaintiff associated her headaches both with her neck and "also sometimes with [her] stomach," stating that it depends on what she eats, or if she wears a "tight ponytail." A.R. 37.

Plaintiff also testified that "[m]any years ago" she burned herself on two fingers and that "after that [her hand] was never the same."  A.R. 33.  As she explained:  "I have a lot of pain because of that, and also my [right] wrist, because of the accident, something happened.  I don't know if it was a nerve or something."  A.R. 33.  Plaintiff stated that she has a splint that she sometimes wears on her right wrist when her wrist "hurts a lot." 33.  Plaintiff also testified that she has tingling in her fingers, and that she has problems opening jars, using buttons and zippers, and getting herself dressed.  A.R. 37.

When asked by the ALJ if she had any other complaints, Plaintiff responded:  "I have diabetes.  I have problems with my cholesterol as well.  I have like a hernia right here in my stomach that it hurts a lot, headaches, problems with my bones.  I feel depressed."  A.R. 34.

Plaintiff described her typical day as:  "I get up, I watch some TV.  I stand up, I walk around, I take a shower, then I talk to my children and sometimes in the middle of the day I go back and lay down because I don't sleep well at night, so I take naps."  A.R. 35.  Plaintiff stated that she takes medicine in the morning, afternoon, and at night.  A.R. 25.  Plaintiff does not cook or do the laundry, because those activities are done by her husband and children.  A.R. 35.

Plaintiff stated she sometimes drives to her children's homes.  A.R. 35.  She also stated that she sometimes goes to church and grocery shopping and/or clothing shopping.  A.R. 36.  Plaintiff testified that she does not walk much.  A.R. 36.  When asked how far she could walk before she has pain, she replied "one block."  A.R. 36.   She also stated that if it is cold outside or raining, she can "feel that [her] bones hurt" in her lower back. A.R. 36-37.

Plaintiff stated that she had surgery in 2001, and was able to work after surgery.  A.R. 37-38.  When asked if there was a particular point in time after the surgery where her pain became worse, she responded:  "There was a time after the surgery that even coughing was very painful, or spitting was very painful as well.  Also when I had to sneeze, for example, also my back hurt a lot.  Also when I was walking and I tripped . . . it was very painful in my back."  A.R. 38.  Plaintiff explained that she felt she could not work as a bus aide, or any other type of job, "[b]ecause when [she] was working at that job it was painful and [she] was feeling better than she [felt at the hearing.]"  A.R. 34.  Plaintiff also testified that after she stopped working she has felt "a little more relaxed," and that when she was working after the surgery she had "pain constantly." A.R. 38.

### D.    ALJ's Findings

9

ALJ West issued a written decision on November 15, 2013.  A.R. 10-19.  The ALJ began by finding that Plaintiff met the insured status requirement of the Social Security Act to remain insured through December 31, 2014.  A.R. 13, 15.  Next, the ALJ applied the standard five-step process to determine if Plaintiff had satisfied her burden of establishing disability.

First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 1, 2010, the alleged onset date.  A.R. 15.

Second, the ALJ found that Plaintiff had the following severe impairments: "status post lumbar spine surgeries and diabetes mellitus."  A.R. 15.

Third, the ALJ found that Plaintiff does not have an impairment, or a combination of impairments, that meets or medically equals the severity of one of the listed impairments under the Act that would qualify for disability benefits.  A.R. 15.  In this step, the ALJ considered section 1.04 (Disorders of the spine).  The ALJ found "the claimant has not lost the ability to ambulate effectively" and that "[t]he claimant does not use any assistive devices for walking and has a normal gait."  A.R. 15.

Fourth, the ALJ found that Plaintiff had the residual functional capacity to perform "the full range of light work" as defined in 20 C.F.R. §§ 404.1567(b).  A.R. 16-18.  In reaching this RFC determination, the ALJ extensively reviewed Plaintiff's statements concerning her physical conditions, as well as her medical records concerning her alleged physical impairments.  *See* A.R. 16-18.  The ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible[.]"  A.R. 16.  The ALJ also gave "little weight" to Dr. Fusman's opinion that Plaintiff was limited to lifting and carrying no more than 10 pounds and that she was limited with bending, crouching, and stooping

because "claimant's activities of daily living would suggest that she is capable of basic daily functioning that contradicts Dr. Fusman's opinion.  Claimant indicated that she is able to shower, watch TV, shop, drive and climb the steps to the entrance of her house.  She also attends church." A.R. 17.  The ALJ also found Dr. Fusman's opinion contradicted by Dr. Merlin's opinion, which was issued one month later, as the ALJ explained:

> Dr. Fusman's opinion is also negated by the report of Dr. Merlin who found [no] significant limitations.  Straight leg raise was to 90 degrees and he noted the claimant was able to sit, stand and walk.  He noted no difficulty with her getting on and off of exam table.  Motor strength, reflexes, gait, station, and grasp strength were all noted as normal (despite the claimant's testimony that she has trouble with buttons and opening jars).  He also noted that she did not need a cane for ambulation. In addition, she testified that she takes only Motrin and Tylenol for pain and she has had no treatment.  Moreover, [the] 2011 MRI showed only mild degenerative changes[,] which is unchanged from [the] 2009 MRI.

A.R. 18 (citations omitted).  The ALJ concluded that Plaintiff retained the residual functional capacity to perform the exertional demands of "light work," stating that his holding was "supported by the claimant's lack of treatment, her activities of daily living, the findings of Dr. Merlin . . . , and the fact that she stopped working due to the position no longer being available and she sought unemployment compensation thereafter, indicating an ability to work."  A.R. 18.

Fifth, the ALJ determined that Plaintiff is capable of performing her past relevant work as a school bus monitor, DOT # 362.667-042.  A.R. 18.  Accordingly, the ALJ concluded that Plaintiff is not disabled.  A.R. 19.

## II.   STANDARD OF REVIEW

On a review of a final decision of the Commissioner of the Social Security Administration, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g); *see Matthews v. Apfel*,

239 F.3d 589, 592 (3d Cir. 2001).  The Commissioner's decisions regarding questions of fact are deemed conclusive on a reviewing court if supported by "substantial evidence in the record."  42 U.S.C. § 405(g); *see Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  While the court must examine the record in its entirety for purposes of determining whether the Commissioner's findings are supported by substantial evidence, *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978), the standard is highly deferential.  *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).  Indeed, "substantial evidence" is defined as "more than a mere scintilla," but less than a preponderance. *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004).  "It means such relevant evidence as a reasonable mind might accept as adequate."  *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999).  A reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder."  *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992), *cert. denied*, 507 U.S. 924 (1993).  Accordingly, even if there is contrary evidence in the record that would justify the opposite conclusion, the Commissioner's decision will be upheld if it is supported by the evidence.  *See Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986).

Disability insurance benefits may not be paid under the Act unless Plaintiff first meets the statutory insured status requirements.  *See* 42 U.S.C. § 423(c).  Plaintiff must also demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. . . ."  42 U.S.C. § 423(d)(1)(A); *see Plummer*, 186 F.3d at 427.  An individual is not disabled unless "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

12

Eligibility for supplemental security income requires the same showing of disability. *Id.* at § 1382c (a)(3)(A)-(B).

The Act establishes a five-step sequential process for evaluation by the ALJ to determine whether an individual is disabled. *See* 20 C.F.R. § 404.1520. First, the ALJ determines whether the claimant has shown that he or she is not currently engaged in "substantial gainful activity." *Id.* at § 404.1520(a); *see Bowen v. Yuckert*, 482 U.S. 137, 146-47 n.5 (1987). If a claimant is presently engaged in any form of substantial gainful activity, he or she is automatically denied disability benefits. *See* 20 C.F.R. § 404.1520(b); *see also Bowen*, 482 U.S. at 140. Second, the ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination of impairments" that significantly limits his physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c); *see Bowen*, 482 U.S. at 146-47 n.5. Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). These activities include physical functions such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." *Id.* A claimant who does not have a severe impairment is not considered disabled. *Id.* at § 404.1520(c); *see Plummer*, 186 F.3d at 428.

Third, if the impairment is found to be severe, the ALJ then determines whether the impairment meets or is equal to the impairments listed in 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Impairment List"). 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant demonstrates that his or her impairments are equal in severity to, or meet those on the Impairment List, the claimant has satisfied his or her burden of proof and is automatically entitled to benefits. *See id.* at § 404.1520(d); *see also Bowen*, 482 U.S. at 146-47 n.5. If the specific impairment is not listed, the ALJ will consider in his or her decision the impairment that most closely satisfies those listed for purposes of deciding whether the impairment is medically equivalent. *See* 20 C.F.R. §

404.1526(a).  If there is more than one impairment, the ALJ then must consider whether the combination of impairments is equal to any listed impairment.  *Id.*  An impairment or combination of impairments is basically equivalent to a listed impairment if there are medical findings equal in severity to all the criteria for the one most similar.  *Williams*, 970 F.2d at 1186.

If the claimant is not conclusively disabled under the criteria set forth in the Impairment List, step three is not satisfied, and the claimant must prove at step four whether he or she retains the "residual functional capacity" ("RFC") to perform his or her past relevant work.  20 C.F.R. § 404.1520(e); *Bowen*, 482 U.S. at 141.  If the claimant is able to perform previous work, the claimant is determined to not be disabled.  20 C.F.R. §§ 404.1520(e), 416.920(e); *Bowen*, 482 U.S. at 141-42.  The claimant bears the burden of demonstrating an inability to return to the past relevant work.  *Plummer*, 186 F.3d at 428.  Finally, if it is determined that the claimant is no longer able to perform his or her previous work, the burden of production then shifts to the Commissioner to show, at step five, that the "claimant is able to perform work available in the national economy." *Bowen*, 482 U.S. at 146-47 n.5; *Plummer*, 186 F.3d at 428.  This step requires the ALJ to consider the claimant's residual functional capacity, age, education, and past work experience.  20 C.F.R. § 404.1520(f).  The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether the claimant is capable of performing work and not disabled.  Id.

## III.    PLAINTIFF'S CLAIMS ON APPEAL

Plaintiff makes three arguments on appeal as to why the ALJ's disability determination was unsupported by substantial evidence.  First, Plaintiff argues that the ALJ's decision should be reversed because the ALJ found she had two severe impairments at Step 2, residuals of lumbar spine surgeries and diabetes, but at Step 3 the ALJ only considered paragraph C of Listing 1.04, and did not consider paragraphs A or B of Listing 1.04, or her diabetes.  Second, Plaintiff argues

that the ALJ's RFC, finding that Plaintiff could perform light work, is not supported by substantial credible evidence and was contradicted by the November 2011 report of Dr. Fusman.  Third, Plaintiff argues that the ALJ erred in finding that she could perform past work as a "school bus monitor," a light work position, when her description of her previous job as a "bus aide" clearly involved medium work activity, such as lifting up to 35 lbs.  The Court shall address each argument in turn.

**A.    The ALJ's "Failure" to Examine Paragraphs A and B of Listing 1.04, and Listing 9.00, at Step 3 of the Analysis was Not Error because the Medical Record did Not Support These Listings.**

Plaintiff argues that the ALJ's decision should be reversed because the ALJ found she had two severe impairments at Step 2, residuals of lumbar spine surgeries and diabetes, but at Step 3 the ALJ only considered paragraph C of Listing 1.04, and did not consider paragraphs A or B of Listing 1.04, or her diabetes.  "Plaintiff bears the burden of proof at step three." *Muniz v. Comm'r of Soc. Sec.*, No. 13-1026, 2014 U.S. Dist. LEXIS 87494, *32 (D.N.J. June 27, 2014) (citing *Meyler v. Comm'r of Soc. Sec.*, 238 F. Appx 884, 889 (3d Cir. 2007)).  Because the evidence in the record did not support finding that these paragraphs were satisfied, I find that the ALJ did not err by choosing not to address these listings at Step 3.

With respect to Listing 1.04, to meet Paragraph A, a claimant must show that she has a disorder of the spine with "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)."  20 C.F.R. Part 404, Subpart P, App'x 1, § 1.04.  To meet Paragraph B, a claimant must show that she has "Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by

appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours." *Id.* A review of the medical record shows it is devoid of any mention of Plaintiff having been diagnosed with (or complaining of) nerve root compression or spinal arachnoiditis.

Similarly, while the medical record clearly demonstrates that Plaintiff has diabetes mellitus, that alone is insufficient to support a finding in her favor at Step 3. Listing 9.00 provides that the disabling effects of diabetes mellitus are to be evaluated by the effect of the condition on other body systems. *Id.* at §§ 9.00(B)(5)(a)(i), (C). The medical record in this case shows that Plaintiff's diabetes is under control. Indeed, when Dr. Merlin examined Plaintiff, he noted she had never been hospitalized for uncontrolled diabetes, and that "[s]he denie[d] ophtalmologic, cardiac, renal[,] or neurological involvement." A.R. 268. Thus, the ALJ's "failure" to consider Listing 9.00 at Step 3 was not error. *See Cooksey v. Colvin*, 605 F. Appx. 735, 737-38 (10th Cir. 2015) (holding ALJ did not err in failing to consider Listing 9.00 at Step 3 where record did not suggest claimant satisfied requirements of listing).

**B.     The ALJ Did Not Err in Rejecting Dr. Fusman's Opinion and Finding that Plaintiff's RFC Allowed her to Perform Light Work.**

Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ rejected the opinion of Dr. Fusman in favor of Dr. Merlin's opinion that Plaintiff was able to perform tasks that qualified as "light work." "'Residual functional capacity' is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)); *see* 20 C.F.R. § 404.1545(a).

> In making a residual functional capacity determination, the ALJ must consider all evidence before him. Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for

16

> discounting such evidence.  In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.

*Burnett*, 220 F.3d at 121 (internal quotation marks and citations omitted); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).  It is the duty of the ALJ, and not the reviewing court, to determine the weight to be given to conflicting medical opinions.  *See Richardson v. Perales*, 402 U.S. 389, 399 (1971).

Here, the ALJ adequately explained why he gave Dr. Fusman's opinion "little weight," based specifically on Plaintiff's testimony concerning her daily activities; Dr. Merlin's observation that she was able to raise her straight leg 90 degrees and sit, stand, walk, and get on and off the observation table with ease, her lack of need for treatment; and Plaintiff's consistent MRIs from 2009 (pre-alleged disability) and 2011 (post-alleged disability).  A.R. 18.  Moreover, the ALJ properly took into account the fact that Plaintiff had held herself out as able to work during her alleged period of disability by collecting unemployment benefits.  *See Myers v. Barnhart*, 57 F. Appx. 990, 997 (3d Cir. 2003).

### C.    The ALJ Correctly Determined that Plaintiff Had an RFC that Enabled her to Perform Past Relevant Work.

At step four, Plaintiff carries the burden to show that she cannot perform her past relevant work.  *See Plummer*, 186 F.3d at 428; *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986).  As the Commissioner correctly argues, Plaintiff was required to show not only that she cannot perform the job *as she performed it* but also *as it is performed in the national economy*. 20 C.F.R. § 404.1560(b)(2); SSR 82-61.  Specifically, SSR 82-61 provides:

> A former job performed in by the claimant may have involved functional demands and job duties significantly in excess of those generally required for the job by other employers throughout the national economy.  Under this test, if the claimant cannot perform the excessive functional demands and/or job duties actually required in the former job but can perform the functional demands and job duties as generally

required by employers throughout the economy, the claimant should be found to be "not disabled."

Thus, while it is true that Plaintiff described her previous position, as a "Bus Aide," as involving heavy lifting and bending to assist children in being seated on the bus, A.R. 28-29, those job duties are not generally required by employers throughout the national economy for this position. While there is no listing for "Bus Aide" in the Dictionary of Occupational Titles, the position of "Bus Monitor" – the most closely analogous position to Plaintiff's previous position[2] – involves "light work" and is described as:

> Monitors conduct of students on school bus to maintain discipline and safety:  Directs loading of students on bus to prevent congestion and unsafe conditions. Rides school bus to prevent altercations between students and damage to bus.  Participates in school bus safety drills.  May disembark from school bus at railroad crossings and clear bus across tracks.

DOT # 372.667-042.  Accordingly, the ALJ's determination at Step 4 that Plaintiff's RFC enables her to perform her past relevant work was not error.

## IV.    CONCLUSION

For the reasons set forth above, I find that the ALJ's decision was supported by substantial evidence in the record. Accordingly, the ALJ's decision is affirmed. An appropriate Order shall follow.

Dated: May 31, 2016

---

[2] I note that the Dictionary of Occupation Titles also includes the position of "Bus Attendant," which requires "light work," and does not appear to be analogous to Plaintiff's previous position.  *See* DOT # 352.577-010 ("Renders variety of personal services to bus passengers to make their trip pleasant: Welcomes passengers boarding bus.  Adjusts seating arrangement to accommodate passengers when requested. Answers questions about bus schedules, travel routes, and bus services.  Points out places of interest.  Distributes magazines, newspapers, pillows and blankets.  Mails passengers' letters and arranges for dispatch of telegrams.  Tends tape recorder to provide music.  Serves refreshments.  Lists names of passengers on manifest.  Maintains inventory to account for food served during trip and food on hand.  May warm bottles for babies.").  Clearly, Plaintiff described her previous position as assisting with the busing of students and not the general public.  A.R. 28-29.

/s/ The Honorable Freda L. Wolfson

United States District Judge